# CV 08 0094

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 07 2008 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------x (NSI)

LOUIS A. PISANI

      Plaintiff,    AGAINST:

**COMPLAINT**

**BIANCO, J.**
**LINDSAY, M.**

(Jury Trial Demanded) ✳

1) JUDGE ANTHONY FALANGA
2) JUDGE PAUL SIEGEL
3) GEN MAG ROB JONES
4) MR. HARVEY ROGERS, ESQ. P.A.

      Defendants.

5) JUDGE HENRY HARNAGE
-----------------------------------------------x

I.    Parties:

→ Plaintiff _L. PISANI_, resides at 99 MARGUERITE AVE ELMONT, N.Y. 11003

Defendant _P. SIEGEL_, resides at 175 N.W. FIRST AVE MIAMI, FLA 33128 COURTHOUSE CENTER

Defendant _R. JONES_, resides at 175 N.W. FIRST AVE MIAMI, FLA 33128 COURTHOUSE CENTER

H. ROGERS COURTHOUSE PLAZA, SUITE 500 28 WEST FLAGLER ST MIAMI, FL. 33130

JUD. H. HARNAGE 1221 BRICKELL AVE ① -1891 MIAMI, FLORIDA 33131

II.    The jurisdiction of the Court is invoked pursuant to DIVERSITY OF CITIZENSHIP

JUDGE A. FALANGA, NASSAU COUNTY SUPREME COURT BUILDING 100 SUPREME CT DRIVE MINEOLA N.Y. 11501

III.    Statement of Claim. [give a clear and concise statement of facts, where the claim arose, the date of each relevant event, a description of what occurred and how each defendant named was involved in the claim]

(SEE ATTACHED)

② FEDERAL QUESTION
③ SUPPLEMENTAL JURISDICTION

IV.    Remedy. State what relief, such as money damages, you seek from each defendant.

(SEE ATTACHED)

1/5/08
Date

_Louis A. Pisani_
Sign Your Name

516-902-0087
Telephone Number

212-426-7151

JURISDICTIONAL BASIS

I  PLAINTIFF CLAIMS FEDERAL JURISDICTION PURSUANT TO
ARTICLE III §2 WHICH EXTENDS THE JURISDICTION TO
CASES ARISING UNDER THE U.S. CONSTITUTION.

II  PLAINTIFF BRINGS THIS SUIT PURSUANT TO TITLE 42
US CODE §1983 FOR VIOLATIONS OF CERTAIN PROTECTIONS
GUARANTEED TO HIM BY THE FIRST, FIFTH, EIGHTH, NINTH
AND FOURTEENTH AMENDMENTS OF THE FEDERAL CONSTITUTION
BY THE DEFENDANTS UNDER COLOR OF LAW IN:
HIS CAPACITY AS A JUDGE IN SUPREME COURT OF NASSAU, N.Y.
JUDGE ANTHONY FALANGA
HIS CAPACITY AS CIRCUIT JUDGE IN THE 11th DISTRICT OF MIAMI, FL
JUDGE HENRY HARNAGE
HIS CAPACITY AS CIRCUIT JUDGE IN 11th DISTRICT OF MIAMI, DADE, FL
JUDGE PAUL SIEGEL
HIS CAPACITY AS GENERAL MAGISTRATE IN 11th DISTRICT OF MIAMI DADE FL
ROBERT J. JONES
HIS CAPACITY AS ATTORNEY FOR AMERICA LOPEZ
HARVEY ROGERS, P.A.

PARTIES

III  PLAINTIFF - LOUIS A. PISANI. IS A NATURAL PERSON RESIDING
99 MARGUERITE AVE  ELMONT, NEW YORK 11003.

CV 08 0094

IV  DEFENDANTS: JUDGE ANTHONY FALANGA
100 SUPREME COURT DRIVE, MINEOLA, NEW YORK 11501
JUDGE HENRY HARNAGE
1221 BRICKELL AVENUE MIAMI, FLORIDA 33131
JUDGE PAUL SIEGEL
175 N.W. FIRST AVENUE MIAMI, FLORIDA 33128
GEN MAG. ROBERT JONES
175 N.W. FIRST AVENUE MIAMI, FLORIDA 33128
HARVEY ROGERS, P.A.
28 WEST FLAGLER STREET MIAMI, FLORIDA 33130

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

JAN 0 7 2008

LONG ISLAND OFFICE

BIANCO, J.

LINDSAY. M.

STATEMENT OF CAUSE

TITLE 42 U.S. CODE § 1983 READS AS FOLLOWS:

"EVERY PERSON WHO, UNDER COLOR OF ANY STATUTE, ORDINANCE, REGULATION, CUSTOM, OR USAGE, OF ANY STATE OR TERRITORY, SUBJECTS, OR CAUSES TO BE SUBJECTED, ANY CITIZEN OF THE UNITED STATES OR OTHER PERSON WITHIN THE JURISDICTION THEREOF TO THE DEPRIVATION OF ANY RIGHTS, PRIVILEGES OR IMMUNITIES SECURED BY THE CONSTITUTION AND LAWS, SHALL BE LIABLE TO THE PARTY INJURED IN AN ACTION AT LAW, SUIT IN EQUITY, OR OTHER PROPER PROCEEDING FOR REDRESS."

I, LOUIS A. PISANI, DECLARE UNDER PENALTY OF PERJURY, THAT THE FOLLOWING IS TRUE:

THAT JUDGE SIEGAL AND GENERAL MAG JONES PERMITTED EX PARTE ATTACHMENT I.E. SEIZURE OF REAL ESTATE WITHOUT PROPER AND JUST HEARING IN THE PLAINTIFFS RESIDENTIAL STATE COURT AND UNPROPER DEPRIVATION OF PROPERTY WITHOUT ADEQUATE DUE PROCESS, VIOLATING THE FIFTH AMENDMENT AS WELL AS THE FOURTEENTH AMENDMENT. (WRITS OF BODILY ATTACHMENT) THIS WAS AN EX-PARTE RESTRAINING ORDER ISSUED BY GEN MAGISTRATE JONES ON PART WITH HARVEY ROGERS WHICH FORCED PLAINTIFF OUT OF HIS HOME BASED ON AN ABUSIVE USE OF INFLUENCE BY ATTORNEY HARVEY ROGERS IN CONCERT OF A CAMPAIGN CONTRIBUTION OF THE ATTORNEY TO VARIOUS JUDGES IN THE ELEVENTH JUDICIAL CIRCUIT OF MIAMI DADE-COUNTY.

SUBSEQUENT TO THIS PREFACE AND THROUGHOUT THE COURSE OF THE PLAINTIFF STATES:

1) HE HAS BEEN DISCRIMINATED AGAINST BECAUSE OF HIS NATIONAL ORIGIN.

PLAINTIFF HAS BEEN DISCRIMINATED AGAINST BECAUSE OF HIS GENDER.

PLAINTIFF HAS BEEN DISCRIMINATED AGAINST BECAUSE OF HIS POLITICAL OPINION.

2) PLAINTIFF CLAIMS THAT THE JUDGE AND GENERAL MAGISTRATE ACTED IN CONCERT WITH ATTORNEY HARVEY ROGERS ULTRA-VIRES. (BEYOND THEIR LEGAL JURISDICTION)

3) PLAINTIFF CLAIMS THAT ATTORNEY HARVEY ROGERS APPEARED OR SCHEDULED APPEARANCES BEFORE JUDGE PAUL SIEGAL FOR 5 MINUTE HEARINGS IN MIAMI. WHILE SAME WAS RESIDENT OF NEW YORK AND FULLY EMPLOYED.

4) THE DISSOLUTION OF THIS MARRIAGE SHOULD NOT HAVE TAKEN PLACE IN MIAMI-DADE COUNTY. THE MARRIAGE WAS CONSUMATED, THE COUPLE WAS LIVING MARRIED IN NASSAU COUNTY THE COUPLE CO-HABITATED IN NASSAU COUNTY FROM 1993-TO-2000.

5) THE CHILDREN WERE BORN IN NASSAU COUNTY. (EXHIBIT A)

6) THE CHILDREN WERE BAPTIZED IN NASSAU COUNTY.

7) THE PLAINTIFF HAD LIVED IN NASSAU COUNTY SINCE 1976 (NEVER A RESIDENT OF FLORIDA.)

8) THE PLAINTIFF WAS BORN IN NEW YORK, NEW YORK

9) THE PLAINTIFF HAS A PHARMACY LICENSE FROM N.Y.

10) THE PROPERTY WHICH WAS SOLD IS IN **NASSAU COUNTY.**

11) THE GEN MAGISTRATE ROBERT JONES SEIZED THE REAL ESTATE IN **GARDEN CITY, NASSAU COUNTY** WITHOUT GIVING THE PLAINTIFF       NASSAU COUNTY COURT PROCEEDING WHICH IS A DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS, VIOLATING THE PLAINTIFFS FIFTH AS WELL AS FOURTEENTH AMENDMENT.

12) HARVEY ROGERS AND GEN MAGISTRATE **JONES**   INTIMIDATED THE PLAINTIFF WITH THE THREAT OF BODILY ATTACHMENT IF HE DID NOT SIGN QUIT CLAIM **DEED** TO A PROPERTY LOCATED IN NEW YORK STATE.

13) THE PLAINTIFF DID **NOT AGREE** TO THE **PRICE,** SO HE OFFERED AND OBTAINED **FINANCING** TO BUY EX WIFES **PORTION.**

14) **GEN** MAGISTRATE JONES .          **REJECTED** THIS AND ALLOWED MONEY TO BE PLACED       TRUST ACCOUNT IN JUNE 2007.

15) PLAINTIFF AS OF THIS DATE HAS NOT SEEN A PENNY OF THIS MONEY.

16) ROBERT J JONES CONTINUES TO ATTACH       WRITS OF BODILY ATTACHMENT CAUSING HAVOC, PAIN AND SUFFERING UPON THE PLAINTIFF AND HIS CHILDREN.

17) THE ARREARGE TOTAL OF CHILD SUPPORT WAS CALCULATED WHEN THE PLAINTIFF WAS NOT WORKING **AND**       RECEIVING SOCIAL SECURITY DISABILITY.

18) I QUESTION THE VENUE OF THIS DISSOLUTION OF MARRIAGE IN MIAMI-DADE COUNTY

19) THE JURISDICTIONAL ISSUE HERE IS IN QUESTION AND THE PKPA TAKEN INTO CONSIDERATION.

20) THE RESPONDENT HAS COOPERATED IN THE LISTING OF THE RESIDENCE INCLUDING A "FOR SIGN SALE" REQUEST POSTED ON PROPERTY.

21) PLAINTIFF HAS INQUIRED WITH REALTORS IN THE COMMUNITY ABOUT SALE OF THE HOUSE.

22) THE GENERAL MAGISTRATE HAS ACTED IN A MALICIOUS AND DISCRIMINATORY MANNER TOWARDS PLAINTIFF THROUGH OUT THE PROCESS DENYING HIM HIS CIVIL RIGHTS UNDER THE FIRST, FIFTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENT.

23) JUDGE PAUL SIEGAL HAS DEPRIVED THE PLAINTIFF AND HIS CHILDREN UNDER FOURTEENTH AMENDMENT FREE CONTACT, EVEN AFTER HE ASSIGNED A SUPERVISOR IN THE FORM OF RITA ALEXANDER, RIDICULED HER WHEN SHE WAS PRESENTING HER REPORT.

24) JUDGE SIEGAL DISCRIMINATED AGAINST THE PLAINTIFF BECAUSE OF HIS NATIONAL ORIGIN.

25) HARVEY ROGERS ESQ HAS COMMUNICATED EX PARTE AND CONTRIBUTED TO ELECTION CAMPAIGNS OF . INVOLVED IN THIS CASE.

26) HARVEY ROGERS HAS ISSUED CONTEMPT REQUESTS TO HAVE THE HOME SOLD TO THIRD PARTY SO HE COULD PLACE MONEY IN HIS TRUST ACCOUNT.

27) THIS DISSOLUTION SHOULD HAVE TAKEN PLACE IN NASSAU COUNTY.(EXHIBITS B AND C)

29) AT THE TIME THE PLAINTIFF HAD NO PERSONAL OR BUSINESS CONTACTS WITH THE STATE OF FLORIDA FOR IT TO HAVE PERSONAL JURISDICTION ON THE SUBJECT.

GENERALLY SPEAKING, HERE THE NOTION OF JURISDICTION OFFENDS THE NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE.

(SEE INTERNATIONAL SHOE V.S WASHINGTON)

THE PLAINTIFF HAS NO CONTACTS IN THE ENTIRE STATE OF FLORIDA.

30) THE VENUE HERE IS THE LIMITING FACTOR.
(SEE BURNHAM V SUPERIOR COURT $ 1391)

31). PLAINTIFF WAS NOT SUBJECTED TO THE COURT OF MIAMI-DADE COUNTY BECAUSE HE WAS NOT RESIDENT THERE (PERSONAL JURISDICTION) THEN THE COURT CANNOT BIND THE DEFENDANT (PLAINTIFF) TO AN OBLIGATION OR ADJUDICATE ANY RIGHTS OVER THE PROPERTY WITHOUT DUE PROCESS IN NEW YORK.

32) JUDGE FALANGA HAS A PATTERN OF DISCRIMINATION AGAINST FATHERS WHO ARE DIVORCED.
(SEE KAPPELER V.S KAPPELER INDEX # 01-200401)
(SEE FRIMET V.S FRIMET) INDEX # 99-013986)

NO. 73986   829 P2D 34  1992 OK 38
DECIDED SUPREME CT OF OKLAHOMA

FIRST AND FOREMOST, A COURT MUST DECIDE WHETHER IT HAS
JURISDICTION SUCH AS WOULD SATISFY THE UCCJA'S JURISDICTIONAL
PREREQUISITES. THE UCCJA, IT IS IMPLICIT IN THE SCHEME
OF THE UCCJA THAT THE COURT MAKE AN INITIAL DETERMINATION
OF JURISDICTION BY EXPRESS FINDINGS OF FACT BEFORE PROCEEDING
TO THE SUBSTANTIVE ISSUE OF CUSTODY.

THAT IS BECAUSE THE EFFICACY OF THE UCCJA TO
ACCOMPLISH ITS PURPOSE, TO AVOID THE HARM THAT COMES TO
THE CHILDREN FROM COMPETITION BETWEEN STATES FOR JURISDICTION.
IN CUSTODY ADJUDICATIONS, DEPENDS UPON A JUDGMENT
THAT IS FULLY INFORMED — AND VALID.

IT IS ONLY "A CUSTODY DECREE RENDERED BY
A COURT OF THIS STATE WHICH HAD JURISDICTION ...."
THAT BINDS THE PARTIES UNDER THE UCCJA.

IT IS A CUSTODY DECREE OF A COURT WHICH
"HAS ASSUMED JURISDICTION UNDER STATUTORY PROVISIONS
SUBSTANTIALLY IN ACCORDANCE WITH THE UCCJA OR WHICH
WAS MADE UNDER FACTUAL CIRCUMSTANCES MEETING THE
JURISDICTIONAL STANDARDS OF (THE UCCJA)" THAT THE
COURTS OF ANOTHER STATE ARE BOUND TO RECOGNIZE AND
ENFORCE.

THUS A RULING OF JURISDICTION BY A COURT THAT IS
MERELY CONCLUSORY OR THAT ASSUMES JURISDICTION, BUT IS
TACIT AS TO THE FACTUAL BASIS FOR THAT ADJUDICATION,
DOES NOT MEET THE OBJECTIVES OF THE ACT.

28) BE THAT AS IT MAY PLAINTIFF ASSERTS THAT
HIS CIVIL RIGHTS HAVE BEEN VIOLATED AS A CITIZEN OF
THE STATE OF NEW YORK DENIED DUE PROCESS AND
INCONVENIENCED TO ADEQUATELY DEFEND HIMSELF IN OTHER
VENUE.
AND FURTHER CITES:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
======================================X

LOUIS PISANI,

**EXHIBIT A**

Plaintiff,                                Index No. 2000 203723

-against-

AMERICA PISANI,                           SUPPORTING AFFIRMATION

Defendant.
======================================X

HAYLEY GREENBERG, an attorney duly admitted to practice law before the courts of the State of New York, hereby affirms the following to be true under penalty of perjury:

1.     I am a partner in GREENBERG & MEROLA, LLP, Attorneys for the above named Plaintiff, and as such am fully familiar with all the proceedings heretofore had herein. I submit this affirmation in support of the instant application.

2.     As can be seen from Plaintiff's affidavit, the conduct of the Defendant has been calculated to avoid receiving the Summons and Complaint and to keep herself and the children in Florida under Florida jurisdiction despite the lack of a Florida connection.

3.     These children were born and raised in New York. Additionally, the parties have lived most of their marriage in New York.

4.     I spoke with Caplan Process Servers about the problems serving Mrs. Pisani with the Summons and Complaint. They indicated that despite going to the residence numerous times they could not locate her. They also advised us that when they went to the work address for her they were told she was not there.

5.     It is clear that she and/or her sister is living there as when Mr. Pisani initiated the Family Court matter he had the process servers attempt service on her and they succeeded in obtaining substituted service by serving the documents on Mrs. Pisani's sister.

6.     Obviously, Mrs. Pisani is aware of all these proceedings as she had an attorney appear for the Family Court matter.

7.     We are requesting a stay of all proceedings in all Florida Courts as this Court should have jurisdiction.

8.     We are also requesting a stay of all proceedings in Family Court-Nassau County as we are not opposing the present motion.  We have been told that we cannot have "open and ongoing" cases in both the Family Court and Supreme Court, thus it is imperative that we obtain a stay of all proceedings in the Family Court.

WHEREFORE, it is respectfully requested that the relief requested herein be granted in its entirety.

Dated:        New York, NY
              January 9, 2001

                                            _Hayley Greenberg_
                                            Hayley Greenberg

*MR*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
=======================================X
LOUIS PISANI,

**EXHIBIT B**

Plaintiff,                                        Index No. 2000 203723

-against-

AMERICA PISANI,                                   SUPPORTING AFFIDAVIT

Defendant.
=======================================X

STATE OF NEW YORK    )
                     )s.ss.:
COUNTY OF QUEENS     )

LOUIS PISANI, being duly sworn deposes and says:

1.     That I am the Plaintiff in the above entitled action and as such am fully familiar with all the facts and proceedings heretofore had herein.  I make this affidavit in support of within application.

## BACKGROUND

2.     I presently reside at 2 Franklin Ct. E. Garden City, New York.  The Defendant, my wife told me she and our two children are residing at 3511 S.W. 100th Ave., Miami, Florida.  Additionally, when I wrote to her at this address that I wanted our children returned to New York, she replied with a letter showing the same return address on the envelope.

3.     I married the Defendant on or about October 30, 1993.  Thereafter, we had two children, namely: Gabriella Pisani born January 18, 1996 and Anthony Pisani born April 20, 1997.

4.     A few years after we were married many problems began with my wife.  She became hostile to the neighbors and violent towards me.  At one point she even threatened me with a knife because I wanted to hold our child.

5.     From the time of their birth, she has always been jealous of the close relationship I have had with our children.

3

6.     Despite these problems, I attempted to keep the marriage together.

7.     Shortly after Anthony was born she went to Florida with the children to see her family.  Then she refused to come back.  In June *1997* for Father's Day I was forced to fly to Florida to spend it with our children!  Eventually, she returned to New York with the children.

8.     Since June, 1997 our relationship has worsened as she has continually tried to take the children from me.  She began running to Florida with the children without telling me.  One time she left with them and I did not hear from her for ten days! Finally she called saying everything was fine and then she returned in two weeks. When she returned Gabrielle had a gash on her hand.

9.     In January, 1999 the last time I was in Florida my wife's sister *ROSSANA LOPEZ* wanted to take the children on a four hour car trip at 11pm at night.  I told her this was not a good idea and thereafter she only spoke Spanish the rest of the night.  My wife did not back me up as it was her sister involved.

10.     On another day, my wife locked Gabrielle in the closet all night despite my protests.  The doctor had told us to childproof the house so that Gabrielle could learn to sleep alone.  I explained this to my wife, but she refused to listen.  I told her this did not mean locking a child in the closet, but she did not listen.  The next morning she was found covered in feces.

11.     In October 1999 it was agreed that the children could visit their grandmother in Florida for a few months, but would be back by Christmas.  It was very difficult to get them back to New York.  Another time my wife's mother placed Anthony in a hot jacuzzi.  She began laughing when I pulled him out because he was crying due to the extreme heat.

## SUBSTITUTED SERVICE SHOULD BE ALLOWED

4

12.    On April 20, 2000 the children again went to Florida to visit and I HAVE NOT SEEN THEM SINCE.  My wife stayed in New York and we tried to work out our problems.  I told her I wanted the children returned, but she refused.  Then on July 14, 2000 she snuck out of the house and left for Florida.  I have not seen her since.

_____ is a copy of a letter from the children's day care showing their last date of enrollment as April 19, 2000)

13.    After she left our home she had my phone turned off which was in my name only.  She also shut off the electricity and the alarm company contract was disconnected.  This is only a small example of the mental problems she faces.

14.    Even after she snuck out in July, I still tried to work things out to no avail and the children remained in Florida, but she refused to allow me to see the children, despite her writing to the contrary.

15.    On or about July 24, 2000, I filed a writ for habeas corpus and a custody petition with the Family Court-Nassau Court.  It was only then that I finally realized the extent she would go to assure that I never see our children.

16.    The Sheriff was unable to serve her at the very address both herself and our children were supposed to be residing at.  The Sheriff's notes indicate "Unable to serve after several attempts left notices she never answered plaintiff notified"

17.    Eventually she was served with the Family Court papers on August 29, 2000 by substituted service on her sister, Balbina Lopez after I hired a process server in Florida.

18.    During this time period I had several Family Court appearances that were adjourned due to the service problem, however she had employed an attorney to appear on her behalf since she obviously knew about the proceedings.  Her attorney was Johnathan Braverman, Esq., 38 Willis Ave., Mineola, New York 11501.

19.    Shortly thereafter her attorney made a motion to dismiss for failure to obtain jurisdiction in the Family Court which motion was not opposed and the present proceeding was started.

20.    During this time period my wife also engaged Florida attorneys, Norman Segall, Esq., 701 Brickell Ave., Ste. 1900, Miami, Florida, to begin litigation in Florida.  I believe so far she has obtained or attempted to obtain an Order of Protection and a divorce from the Circuit Court of the Eleventh Judicial District for Dade County, Florida.

21.    I have had to engage various Florida attorneys to defend me on these pending cases.

22.    The within matter was started on October 11, 2000 by the purchase of the index number.  My wife's action for a divorce was started October 25, 2000 as indicated by the court date stamped on the divorce papers I received.

23.    After the within matter was started my attorney advised me that the process servers went to the location where my wife and children are supposed to be and could not locate them!  I gave her another address to give the process server where I thought my wife might be working.  Thereafter, she advised me that the process server wen there and could not locate my wife.

24.    I implore the Court to help me in this matter.  My wife is intentionally avoiding service!  She hopes to have this matter litigated in Florida where her family is.  This is disgraceful.  Our children have lived their entire lives in New York and this is where this matter should properly be decided.

25.    I do not know of any other address where my wife and children may be residing.

04/02/01  MON 16:19 FAX 516 571 0162          ANTHONY J FALANGA                              @001

# READING COPY

SUPREME COURT, STATE OF NEW YORK
COUNTY OF NASSAU
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LOUIS PISANI,

                 Plaintiff

*against*

AMERICA PISANI,

                 Defendant
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Trial/IAS Part 29
Index No. 00-203723
Sequence No. 01, 02
Submit Date 3/20/01

*EXHIBIT* C

**DECISION & ORDER**

PRESENT: HON. ANTHONY J. FALANGA

      This is a motion by the plaintiff for an order removing a custody matter from the Nassau County Family Court and transferring it to the Supreme Court, Nassau County, to be consolidated with the instant divorce action. The defendant cross moves for an order pursuant to CPLR 2201 staying the plaintiff from proceeding to prosecute the instant action pending the determination of an evidentiary hearing in the State of Florida on the plaintiff's application to dismiss a divorce action commenced by the defendant in Florida.

      The parties were married on October 30, 1993. There are two children of the marriage, Gabriella, born January 18, 1996 and Anthony, born April 20, 1997. The plaintiff resides in the marital residence in East Garden City. The defendant currently resides in Miami, Florida. The children, born in New York, have been in Florida since April 20, 2000.

      The defendant alleges that she and the children moved to Florida, on April 20, 2000, with the intention of establishing permanent residency in that state. The defendant obtained a Florida driver's license on April 25, 2000. Her motor vehicle is registered in Florida and she is registered to vote in Florida.

      On or about July 24, 2000, the plaintiff filed a writ of habeas corpus and a custody petition in the Nassau County Family Court. The writ and the petition were dismissed on October 2, 2000, on the defendant's unopposed motion, on the ground that the Court lacked in personam jurisdiction over the defendant.

      The plaintiff purchased an index number and filed a summons and complaint commencing the instant action for divorce on October 11, 2000. The defendant filed an action for divorce in Florida on October 25, 2000. On October 26, 2000, a consent order was granted by the Circuit Court in and for Miami-Dade County, Florida giving the defendant temporary custody of the children and granting her a temporary injunction against domestic violence. The order prohibits the plaintiff from having any contact with the defendant. It prohibits the removal of the children from the State of Florida, pending a hearing, under penalty of felony prosecution. The order notes that there are divorce actions pending in both New York and Florida which will address issues of jurisdiction and custody, and sets forth that the orders entered in the divorce actions shall be binding upon the parties.

Index No. 00-203723                                          Page 2

The defendant effectuated service of the Florida divorce papers on the plaintiff before the end of the year 2000. The plaintiff did not effectuate service of the summons and complaint in the instant action until January 26, 2001.

The plaintiff has moved in Florida for an order dismissing the divorce action commenced by the defendant. An evidentiary hearing on the plaintiff's motion commenced on February 6, 2001 before the Hon. Henry H. Harnage. The hearing has not been completed and is scheduled to continue on April 5, 2001. On February 6, 2001, the plaintiff was arrested in Florida on a charge relating to a violation of a "stay away" Domestic Violence Order.

The plaintiff now moves this Court for an order "consolidating" with the within action, the proceedings dismissed by the Nassau County Family Court by order dated October 2, 2000. The defendant cross moves for an order staying the prosecution of the instant action until the Florida court renders its decision on the plaintiff's motion to dismiss.

In support of her cross motion, the defendant alleges 1) that Florida is the children's home state; 2) that she permanently relocated the children's residence in Florida with the plaintiff's permission; 3) that there is a history of domestic violence in New York for at least five years preceding April 2000, including three arrests of the plaintiff in 1999 relating to violations of a Temporary Order of Protection, which resulted in guilty pleas; 4) that the plaintiff was convicted of Medicaid Fraud and is on probation; 5) that the plaintiff has not applied for visitation in the Florida courts; 6) that she believes the former marital residence is in foreclosure or is in danger of imminent foreclosure; 7) that the plaintiff has not paid any child support; 8) that plaintiff's attorney stated on the record in this Court on March 14, 2001 that she did not know what her client did for a living.

The plaintiff alleges that he had only agreed that the children stay in Florida for a temporary visit while he and the defendant tried to work out their problems. He asserts that it would be in the children's best interest if he were awarded custody and claims that the defendant and her family members have committed acts like locking a child in a closet or putting a child in a hot jacouzzi, which have jeopardized the children. He alleges that the defendant has denied him visitation and access to the children.

The plaintiff's attorney asserts that New York should exercise jurisdiction over the instant action without waiting for a determination from the Florida court on the ground 1) that the New York action was commenced first; 2) that the defendant should not be rewarded for evading service of process; and 3) that pursuant to the UCCJA and DRL 75-c(5) and 75-d 1(a) and 28 USCS 1738A, The Parental Kidnapping Prevention Act (PKPA) New York is the childrens' home state.

Index No. 00-203723                                                                    Page 3

     The relevant well-settled law has been set forth by the Court of Appeals in *Vanneck v Vanneck*, 49 NY2d 602:

> Traditionally, an injunction against prosecution of a foreign divorce would be granted when the rights of a resident spouse were threatened (see, *Garvin v Garvin*, 302 NY 96). The grant of such relief involves the exercise of discretion after consideration of such factors as the bona fides of the domicile established in the other State, the motivation for commencing an action there and the substantiality of contacts with that forum (see, e.g., *Gersten v Gersten*, 61 AD2d 745; *Browne v Browne*, 53 AD2d 134). When the parties to a divorce proceeding seek as ancillary relief a child custody determination, however, the UCCJA is applicable (Domestic Relations Law, 75-c, subd. 3). A separate inquiry, with proper weight accorded to the provisions of the act, is required for determining whether the custody phase of the litigation may proceed in the foreign court. To assure that the best interests of the child and salutary provisions of the act are not subordinated to the parents' interest in obtaining the best terms of the divorce, the court should determine whether to enjoin prosecution of the divorce only after the inquiry concerning the custody issues has been undertaken. Of course, the decision whether to exercise custody jurisdiction is a factor in determining the propriety of injunctive relief against the divorce phase, and the weight to be accorded this factor may vary depending on the circumstances of the particular case. The preliminary decision concerning New York's exercise of jurisdiction over the custody issues, however, must have as its foundation the proper application of the UCCJA.

> The UCCJA represents a considered effort to give stability to child custody decrees, minimize jurisdictional competition between sister states, promote cooperation and communication between the courts of different states, all to the end of resolving custody disputes in the best interests of the child (see, Domestic Relations Law, 75-b; Prefatory Note of Commissioners on Uniform State Laws, 9 ULA (Master Ed.), pp. 111-114; see, generally, Governor's Memorandum approving L.1977, ch. 493; 1977 McKinney's Session Laws of New York, pp. 2514-2515; 96 A.L.R.3d 968). The act offers a standard for determining in the first instance whether the necessary predicate for jurisdiction exists. Custody may be determined in the child's "home state" (Domestic Relations Law, 75-d, subd. 1, par. (a)), defined as "the state in which the child at the time of the commencement of the custody proceeding, has resided with his

Case 2:08-cv-00094-JFB-ARL  Document 1  Filed 01/07/08  Page 18 of 22 PageID #: 18

Index No. 00-203723                                          Page 4

parents, a parent, or a person acting as parent, for at least six
consecutive months" (Domestic Relations Law, 75-c, subd. 5), or
in the state that had been the child's home state within six months
before commencement of the proceeding where the child is absent
from the state through removal by a person claiming custody and a
parent lives in the state (Domestic Relations Law, 75-d, subd.1, par.
(a), cl. (ii)). A jurisdictional predicate also exists in New York when
"it is in the best interest of the child that a court of this state assume
jurisdiction because (i) the child and his parents, or the child and at
least one contestant, have a significant connection with this state,
and (ii) there is within the jurisdiction of the court substantial
evidence concerning the child's present or future care, protection,
training and personal relationships" (Domestic Relations Law, 75-d,
subd. 1, par. (b)).

The inquiry is not completed merely by a determination that
a jurisdictional predicate exists in the forum state, for then the court
must determine whether to exercise its jurisdiction. There, too, the
act guides the determination, commanding the court to consider
whether it is an inconvenient forum (Domestic Relations Law, 75-h)
or whether the conduct of the parties militates against an exercise of
jurisdiction (Domestic Relations Law, 75-i; see, also, *Matter of Settle*,
276 Or. 759, 556 P.2d 962). Notwithstanding that this State has
jurisdiction, a court "shall not exercise its jurisdiction under this
article if at the time of filing the petition a proceeding concerning the
custody of the child was pending in a court of another state exercising
jurisdiction substantially in conformity with this article" (Domestic
Relations Law, 75-g, subd. 1; see, e.g., *Paltrow v Paltrow*, 37 Md.App.
191, 376 A.2d 1134). Once a court of this State learns of the pendency
of another proceeding, the court "shall stay (its own) proceeding and
communicate with the court in which the other proceeding is pending
to the end that the issue may be litigated in the more appropriate forum
and that information be exchanged in accordance with sections seventy-
five-s through seventy-five-v of this article" (Domestic Relations Law,
75-g, subd. 3).

In this action, it is clear that there is a jurisdictional predicate pursuant to DRL 75-d, but
that there is also a colorable claim of jurisdiction in the State of Florida, obligating this Court to
communicate with the foreign court (see, *DeGritje v Delviccario*, __AD2d__, 719 NYS2d 670;
*Rivera v Rivera*, 238 AD2d 268).

04/02/01  MON 16:22 FAX 516 571 0182          ANTHONY J FALANGA                    ☒005

Index No. 00-203723                                                    Page 5

        On March 30, 2001, the undersigned Justice spoke with the Honorable Henry Harnage of
the Circuit Court in and of Dade County, Florida. Justice Harnage advised that the hearing on
the issue of jurisdiction would proceed on April 5, 2001 and that he intended to expeditiously
render a written determination. After exchanging information relevant to the jurisdiction issue
with Justice Harnage, this Court determined that in order to effectuate the policy underlying the
UCCJA, to resolve custody disputes in the best interests of the children, this Court would
temporarily stay prosecution of the instant divorce action pending the determination of the issue
of jurisdiction by the Florida court. Accordingly, it is hereby

        ORDERED, that the defendant's cross motion is granted, and all proceedings in this
action are temporarily stayed pending further order of this Court; and it is further

        ORDERED, that the plaintiff's motion for an order consolidating, with the instant action,
the custody matter previously dismissed, without opposition, by the Nassau County Family
Court, is denied.

                                        E N T E R :

                                        _____
                                        Anthony J. Falanga, Justice
                                        Supreme Court, Nassau County

Dated: April 2, 2001
       Mineola, NY

WHEREFORE PLAINTIFF PRAYS THIS COURT ISSUE
EQUITABLE RELIEF AS FOLLOWS:

1) ISSUE INJUNCTIVE RELIEF COMMANDING DEFENDANTS:   TO

A) DISSOLUTION OF MARRIAGE (I.E. JURISDICTION) DUE PROCESS
TAKE PLACE IN NASSAU COUNTY.

B) THE COURT HOLD IN CONTEMPT THE PLAINTIFF IN THE
MARRIAGE BECAUSE OF HER VIOLATION OF HER INFORMATION
TO PLAINTIFF-FATHER IN VIOLATION OF DISSOLUTION OF MARRIAGE.
VIOLATION SCHUTZ V SCHUTZ NOS 86-1756 - 86-1757
INSTILLING AND NURTURING THE RELATIONSHIP BETWEEN THE
CHILDREN AND THE NON-CUSTODIAL PARENT.

C) THAT THE HONORABLE COURT CONTEMPLATE SINCE THE
PRIMARY RESIDENTIAL PARENT REMAINED NEUTRAL WITH REGARD
TO CONTACT BETWEEN THE CHILD AND THE SRP.
THE PRP MUST TAKE MEASURE AND THE PLAINTIFF IS
REQUESTING THAT THE AMERICA LOPEZ TRANSFER AND LOSE
PRIMARY RESIDENCE OF CHILDREN. WITH $5 MILLION DOLLARS TO
PROVIDE FOR THEM ADEQUATE SHELTER AND EDUCTION FOR TEN YEARS.!

D) ISSUE DECLATORY RELIEF AS THIS COURT DEEMS APPROPRIATE
STOP MAGISTRATE JONES ATTACHING WRITS OF BODILY ATTACHMENT
TO FORCE TO TO SELL MY HOUSE WITHOUT DUE PROCESS AND GIVE
GIVE HIS CAMPAIGN CONTRIBUTOR.

E) ISSUE OTHER RELIEF AS THIS COURT DEEMS
APPROPRIATE AND JUST

F) AWARD PLAINTIFF HIS COSTS OF LITIGATION AND OTHER
INCONVENIENCES.

RESPECTFULLY SUBMITTED,   *Louis G. Pisani*, LOUIS A. PISANI
99 MARGOURITE AVE
ELMONT, N.Y. 11003
(516) 902-0087

STATEMENT OF VERIFICATION
I HAVE READ THE ABOVE COMPLAINT, AND IT IS
CORRECT TO THE BEST OF MY KNOWLEDGE
*Louis G. Pisani*

SUMMARY OF FACTS

1) THE PLAINTIFF PURCHASED AN INDEX NUMBER ON OCTOBER 11, 2000 WHILE THE CHILDREN WERE STILL RESIDENTS OF THE STATE OF NEW YORK.

2) THEY ATTENDED A DAY CARE CENTER CALLED "TUTOR TIME" ON APRIL 19 2000.

3) ACCORDINGLY, THE PERTINENT PORTION OF THE PKPA PROVIDES THAT 1738(g):

"A COURT OF A STATE SHALL NOT EXERCISE JURISDICTION IN ANY PROCEEDING FOR A CUSTODY DETERMINATION COMMENCED DURING A PENDENCY OF A PROCEEDING IN A COURT OF ANOTHER STATE (N.Y.) WHERE SUCH COURT OF THAT OTHER STATE IS EXERCISING JURISDICTION CONSISTENTLY WITH THE PROVISIONS OF THIS SECTION TO MAKE A CUSTODY DETERMINATION."

IN MANY CASES, WHEN YOU ARE FACED WITH DEFENDING AN ACTION, THERE IS ANOTHER ACTION PENDING IN THE INITIAL STATE.

IF SO, SUBSECTION (g) ABSOLUTELY PROHIBITS THE SECOND STATE FROM EXERCISING JURISDICTION.

JURISDICTION IS EVALUATED AS OF THE DATE INVOKED, WHICH IS THE DATE OF THE FILING OF THE ACTION.

WANAMAKER V. SCOTT 788 P 2d 712, 714 ALASKA 1990

WHENEVER THERE IS A CONFLICT BETWEEN THE UCCJA AND THE PKPA, THE PKPA CONTROLS!

THOMPSON V:S THOMPSON 484 U.S. 174 (1988)

THE PKPA PREEMPTS THE AREA OF CUSTODY JURISDICTION AND TAKES PRECEDENCE OVER STATE LAW UNDER THE UNITED STATES CONSTITUTION'S SUPREMACY CLAUSE (ART VI, SEC 2)

UNLIKE THE UCCJA, THE FPKPA DOES NOT ALLOW MORE THAN ONE STATE TO EXERCISE JURISDICTION OVER A CHILD AT ANY GIVEN TIME.

TEMPLETON V:S WITHAM 595 FED SUPP. 770, 772 (S.D. CALIFORNIA, 1984)

"WHERE THE UCCJA PROVIDES BASES FOR JURISDICTION WHICH ARE ALTERNATIVES TO THE "HOME STATE", THE FPKPA CONFERS EXCLUSIVE AND CONTINUING JURISDICTION IN THE "HOME STATE," THE FPKPA CONFERS EXCLUSIVE AND CONTINUING JURISDICTION IN THE HOME STATE."

BAHR V:S BAHR 442 N.Y.S. 2ND 687, 689 FAMILY CT 1981.

JUDGES FALANGA AND HARNAGE FOR ONE REASON OR ANOTHER INTENTIONALLY ACTED. THEY IGNORED THE HOME STATE'S OF NEW YORK JURISDICTION. THE RESULTS OF THEIR ACTIONS AND DECISIONS HAVE BROUGHT PAIN AND SUFFERING TO A FATHERS TIMELY HAPPINESS. HE RESPECTFULLY BEQUEST A SUM OF $10,000.00 DOLLARS FOR THIS AND VIOLATION OF HIS CIVIL RIGHTS.